# Weaver, Executor of Rhodes, *versus* Rhodes.

1. A husband, before the Act of 1848, received a legacy due his wife. He subsequently conveyed property to her without consideration, which they afterwards sold, and the proceeds of which were invested in other land, the title to which was taken in his name. This was also sold, and a note for part of the purchase-money given to them jointly ; in a feigned issue to determine the ownership of the note the court submitted the question of her interest, and its extent, to the jury. *Held*, not to be error.

2. Whether the husband was entitled to the note by survivorship not decided.

May 28th 1878. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Blair county*. Of May Term 1878, No. 17.

. Feigned issue, arising out of the following proceedings: George Weaver, executor of Mary Rhodes, brought two actions of assumpsit against Joseph Fitchner upon his promissory notes for $100 and $3487 respectively, the former made to Mary Rhodes alone, and the latter to Mary Rhodes and Abraham Rhodes, her husband, jointly. Affidavits of defence were filed in each case, setting up that the money belonged to Abraham Rhodes alone, and this issue was thereupon framed to determine its ownership in each case, with Abraham Rhodes, as plaintiff, and Mary Rhodes, executor, as defendant. At the trial, on May 2d 1877, before Dean, P. J., the following facts appeared:

About the year 1834, Abraham and Mary Rhodes were married. She had been previously married, and in the year mentioned she joined with her husband Abraham in a receipt for about $400, and a release to the executor of her first husband's will. He had personal property of probably the same value, and their subsequent acquisitions were entirely the result of their own labor, and the use of this small capital, She received nothing from any other source than her second husband, and the principal question was whether his acts and declarations established a gift to her of the larger note. (The smaller note was found by the jury to be her property, and has no bearing on the matter in dispute.)

It appeared from the testimony on both sides that in May 1852

[Weaver *v.* Rhodes.]

Abraham Rhodes, believing himself to be about to die, conveyed to his wife three parcels of land near Martinsburg for a consideration of $1500, but that she paid no money therefor; that in February 1864 she and her husband conveyed the same to one Campbell, for a nominal consideration of $2000, the real consideration being that Campbell should maintain them during their joint lives and the life of the survivor; that this arrangement proving unsatisfactory, Campbell re-conveyed to her in March 1864 for $1800, no money being paid in either transaction; that in March 1864 one of these parcels was conveyed by her husband and herself to Jacob Oesterle for $900, and in June of the same year the other two were conveyed to Mary Crissman for $2200. There was no evidence outside the title to show that, in the course of these transactions, she claimed to own the land in her own right. In February 1864, Abraham purchased a farm from Michael Sissler for $3447, paying $1148.67 in hand and giving a mortgage in which his wife joined for the balance. The title of this property was made to him. In April 1872 he sold this land to Henry Shaw, and the money paid by Shaw at that time, viz.: $2887, which was at once loaned to Fichtner, together with other loans to Fichtner theretofore made by Abraham, and for which Abraham individually held Fichtner's notes, made up the note in dispute. Fichtner testified as follows concerning the conduct and declarations of the parties at the time it was given:

"Mr. Rhodes suggested to me that they should be put in one note, so that the interest would fall due at the same time and it would be less troublesome. But about the time that this new note was given, or immediately before it was given—after they had determined to put them into one note, Mrs. Rhodes said to me, 'I want the new note in my name.' I told Mrs. Rhodes I didn't like to do that; could not well do it unless the old gentleman was satisfied. I addressed myself to Mr. Rhodes; he was hard of hearing, and I spoke very loudly, telling him what Mrs. Rhodes had said. He said that the money was his, and that he wanted the note in his name, as it was before. They parleyed a little about it; he commenced to talk then to Mrs. Rhodes and got a little loud on it. I saw that they wouldn't come to any agreement, and I told them they should settle upon the matter, and whenever they had determined how it was to be drawn I would draw it, and I left the house then. The next day Mrs. Rhodes came up to my house and told me again she wished the new note to be in her name. I told her I didn't see how I could do it unless he would be satisfied. Either that day or the next day I went down again to see Mr. Rhodes and he again told me that he wouldn't have the note in any other way but what it was in his name. Mrs. Rhodes was by. After talking awhile to them I proposed to them at last to make the note jointly —to draw the note in favor of Abraham and Mary Rhodes. I

don't remember what Mrs. Rhodes said, if she said anything, but I directed my attention to Mr. Rhodes, and told him what I had proposed, speaking loudly to him. He, rather in an angry tone replied; says he : 'I don't care how the note is made, but the money is mine.' I drew up the note accordingly, in order to get rid of it, and this is the note."

There was no testimony in contradiction of Fichtner.

After defendant had given in evidence the conveyances to and from Campbell, plaintiff offered to show in rebuttal that there was no money consideration for either conveyance, to prove that none of Mrs. Rhodes's money was invested in the estate. Objected to as irrelevant. Admitted. Exception for defendant.

The defendant's points with the answers of the court thereto were as follows :—

1. By the deeds in evidence Mary Rhodes was the owner in fee-simple of the three parcels of land in or near Martinsburg.

Ans. " This point is affirmed, but the fact is not material to this issue."

2. The $900 purchase-money for the ten acres sold by Mary Rhodes and her husband to Jacob Oesterle and the $2200 purchase-money of the land sold by them to Mary Crissman, in all $3100, belonged to Mary Rhodes as her separate estate.

Ans. " The answer to this point can have no bearing on this issue."

3. If the proceeds of the sale of the Martinsburg property were invested in the purchase of the farm from Sissler, Mary Rhodes, notwithstanding the deed was made by Sissler to Abraham Rhodes, acquired an interest in that farm as her separate estate, proportioned to the amount of her money so invested, and when the farm was sold to Shaw she was entitled to a like proportion of her purchase-money.

Ans. " This point is denied."

4. If the money of Mary Rhodes was invested in the Sissler farm, and if, when the money was paid by Shaw and loaned to Fichtner, Abraham Rhodes refused to permit the note to be made payable to her alone, he did not thereby impair her right to so much of the money as represented her interest in the land. It remained hers notwithstanding such refusal; nor did she by her consent to accept a note to herself and husband jointly relinquish any right to the full amount of her interest in the purchase-money included in her note.

Ans. " The point is denied."

5. Even if Mary Rhodes had no equitable title to the purchase-money paid by Shaw, if the jury find from all the evidence that she was in fact the sole owner of the $3400 note they should so find, notwithstanding the name of Abraham Rhodes is written as a joint payee.

[Weaver v. Rhodes.]

Ans. " There is no evidence in the case from which you can find that Mary Rhodes was the sole owner of the note."

6. In any view of the evidence Mary Rhodes's executor is entitled to the note of $100, and to one-half of the $3400 note.

Ans. " The executor is entitled to a verdict for the $100 note; also, to a verdict for the one-half of the other note, if the weight of evidence shows that Abraham Rhodes made a gift of one-half of it to his wife, as we have already instructed you in our general charge."

In the general charge the court also said, inter alia :

" We instruct you as a matter of law, that there is no evidence here which shows that prior to the 1st April 1872, Mrs. Rhodes had any right to any portion of the proceeds of the sale of the Shaw farm. The whole legal and equitable estate in the land bought from Sissler was in Abraham Rhodes, and he was entitled to receive, after she joined in a deed, the entire consideration-money. * * *

" But the evidence is undisputed that they started with a joint capital of six or seven hundred dollars, which, by their joint earnings, was increased up to the time of the purchase of the Martinsburg property (when the title was put in her name), to probably $1500. Of course, if the conveyance was taken in her name, the title was hers, and the assent of the husband to its being hers would be implied and the money from the sale of the Martinsburg land was hers, and if she had chosen to keep it would have been hers to the day of her death ; but she chose to put it in other property and have the title taken in the name of her husband. There is not a spark of evidence in this case of any coercion or compulsion exercised by the husband to get the money from her, or of any fraud or deception practised upon her in taking the title in his name. This must, therefore, be taken as having been done with her full consent, there being no evidence of dissent on her part, and from the day in 1864 [1872 ?] when the title was taken in his name, that land and the increased value of it was his just as much as the land in Martinsburg, which was taken in her name, was hers. * * *

" There is no evidence here that shows the one-half of this $3487 note to be hers, and we instruct you that on the undisputed evidence in the case you must find the one-half of this note belongs to the plaintiff. As to the other half of the note, we instruct you that if the weight of the evidence satisfies you that he made a gift of it to his wife at the time the note was made, it was hers."

The eighth point of the plaintiff, which the court reserved, and upon which it afterwards entered judgment for the plaintiff, was as follows :—

That the note of $3487, being made payable to Abraham and Mary Rhodes—they being husband and wife—Abraham Rhodes

[Weaver *v.* Rhodes.]

the plaintiff, is entitled as survivor, by reason of the legal unity existing between husband and wife, to recover the whole amount of said note, and that the verdict must be for the plaintiff for the amount of that note.

Verdict for the plaintiff and judgment thereon, to which defendant took this writ, assigning for error the answers to his points, the quoted portions of the charge, and the admission of testimony explanatory of the conveyance to Campbell. There was no assignment of error in relation to the reserved point.

*S. S. Blair*, for plaintiff in error.

*H. M. Baldridge*, for defendant in error.

Mr. Justice MERCUR delivered the opinion of the court, October 7th 1878.

This was a feigned issue between Abraham Rhodes of the one part, and the executor of his deceased wife Mary of the other part. It was to try the right to certain money paid into court by Joseph Fichtner, on a note executed by him in 1872, to Abraham and Mary Rhodes. The contention involved an inquiry into the ownership of the property which was the consideration of this note. Evidence was given in relation to their business transactions, covering the whole period of their married lives. They were married in 1834. Each party then owned property of the value of a few hundred dollars.

Although numerous errors are assigned, they may all be considered together. The uncontradicted evidence shows the note of Fichtner in contention was given in consideration of other notes against Fichtner, payable to Abraham Rhodes alone, and some money loaned by Abraham to Fichtner at the time the last note was executed. One of the notes was for $2887, and the money, for which this note was given, was obtained by Abraham from one Shaw, on a sale to him in 1872 of a farm, the title to which had been in Abraham from 1864.

The appellant attempted to prove the wife was entitled to a portion of the money paid by Fichtner in two ways. The one by showing her previous ownership of property; the other by the conduct of the parties when the last note was executed.

In support of the first view, it was shown that in 1834 Abraham and his wife united in giving a receipt for a legacy due to her of about $400; but there was no evidence that she took the money into her possession. At that time the law gave the personal property of the wife to the husband. It was not shown that she had the possession or control of this money at any time thereafter. There was no proof that she loaned it to him, or that he promised to repay it. There was no understanding that he should invest it

for her, and no evidence that he ever did so.　He appears to have mingled it with his other funds and treated it as his own property.

It is true, in 1852, he conveyed some lands to her, and this land is claimed by the appellant to be the foundation of her title to the money in controversy.　The uncontradicted evidence is, that he made this conveyance to her at a time when he was sick and expected to die; that she neither paid, nor was expected to pay, anything therefor.　They had no children, and the deed was made with the supposed view of avoiding a collateral inheritance tax.

The conveyance of the land to Campbell, in consideration of his agreement to support Abraham and wife, and the reconveyance thereof, and the subsequent conveyances to Crissman and Sissler were not accompanied by any agreement between Abraham and his wife, or by declarations of either of them, indicating that she had any equitable interest therein as against him.　The fact that when Sissler conveyed the land to Abraham, on the 23d February 1864, the wife of the latter united with him in the mortgage given to secure the payment of a part of the purchase-money, creates no legal presumption that the land was purchased with her funds or on her credit.　The title thereto was made to him alone, and remained in him until he conveyed to Shaw, more than eight years thereafter. There is not a particle of evidence tending to show that she had any estate in the land during the intervening time.　He was therefore entitled to receive in his own right the whole purchase-money paid by Shaw.　Having so received it, the money was his exclusive property.　The court was therefore right in saying Mrs. Rhodes had no right to any portion of it.

The other question requires us to consider the acts and declarations of the parties at the time the last note was executed by Fichtner.　The former notes and the money, which were the consideration for this note, were the property of Abraham alone.　He suggested to Fichtner that they should all be put into one note.　After it was so agreed, Mrs. Rhodes said to Fichtner "I want the new note in my name."　He replied that he could not so make it unless her husband assented, and then informed him of her request. Abraham "said that the money was his, and that he wanted the note in his name, as it was before."　They failed, that day, to agree on the form of the note.　On the next day Mrs. Rhodes again expressed a desire to have the new note made payable to her; but as Fichtner swears, Abraham "again told me that he would not have the note in any other way but what it was in his name.　Mrs. Rhodes was by."　After talking awhile to them, Fichtner proposed to make the note to them jointly.　To this Mrs. Rhodes made no reply; but Abraham, in rather an angry tone said, "I don't care how the note is made; but the money is mine."　Fichtner then drew the note payable to both of them.

Thus it appears, he clearly asserted his exclusive right of pro-

perty, and an unwillingness to relinquish the same or any evidence thereof. She did not deny his right nor assert any claim in opposition thereto. Apparently as a favor, she requested that the note be made payable to her. At the suggestion of the maker, and to him, he reluctantly expressed an indifference as to the form of the note. Yet, to avoid any seeming waiver of his rights, he added: "but the money is mine." These were his last words in relation to the execution of the note. In view of all this evidence, we cannot see that the appellant has any cause of complaint against the court for having submitted to the jury to find whether he made a *gift of one-half of the note to her at the time of its execution.* The jury found he did not. This finding disposed of the whole case, and the question reserved became irrelevant. It is therefore not necessary for us to now consider it.

Judgment affirmed.